## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF GEORGIA
## NEWNAN DIVISION

| | |
|---|---|
| Expeditors International of Washington, Inc., | |
|     Plaintiff, | CIVIL ACTION NO: |
| v. | JURY TRIAL DEMANDED |
| Gregory H. Hutcheson and William Woodall, | |
|     Defendants. | |

## COMPLAINT

Expeditors International of Washington, Inc. ("Expeditors" or the "Company"), by and through its undersigned attorneys, for its Complaint against Gregory H. Hutcheson ("Hutcheson") and William Woodall ("Woodall") (individually and collectively "Defendants"), alleges, on knowledge as to its own actions, and otherwise upon information and belief, as follows:

### PRELIMINARY STATEMENT

1. This is an action by Expeditors against Defendants for their theft of approximately $671,000 from Expeditors; Hutcheson's tortious interference with Expeditors' business relations; and Hutcheson's continued defamatory statements for which Expeditors has incurred reputational damage and that risk the physical safety of Expeditors' employees, executives, and directors.

2. Expeditors seeks (1) damages resulting from Defendants' unlawful conduct; (2) injunctive relief against Hutcheson forcing him to cease his defamatory and harassing statements against Expeditors and its employees, executives, and directors and his tortious interference with Expeditors' business relationships; and (3) such other relief that the Court may award.

## JURISDICTION

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1), in that this is a civil action between Expeditors, a citizen of the state of Washington, and Hutcheson and Woodall, both citizens of the state of Georgia, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

## VENUE

4. Venue is proper in this district under 28 U.S.C. § 1391(b)(2), in that a substantial part of the events or omissions giving rise to the claim occurred in this district.

## PARTIES

5. Expeditors is a corporation that is incorporated in the state of Washington and has its principal place of business in Bellevue, Washington. Expeditors is a Fortune 500 service-based global logistics company, which generates highly optimized and customized supply chain solutions for its clients with unified technology systems integrated through a global network of over 340+ locations in

100+ countries on six continents. Amongst its global operations, Expeditors conducts freight forwarding services at its Atlanta Branch located at 2764 Anvil Block Road, Ellenwood, Georgia 30294.

6. Upon information and belief, Hutcheson, a former employee of Expeditors, is a citizen of the state of Georgia residing in Fayetteville, Georgia.

7. Upon information and belief, Woodall is a citizen of the state of Georgia. Woodall represented himself to Expeditors as an employee of Primo LLC ("Primo") purportedly located in Jasper County, Georgia.

## FACTS

### a. Hutcheson's Employment at Expeditors

8. On or around August 15, 2002, Expeditors hired Hutcheson to work as a Warehouse Agent at Expeditors' Atlanta Branch.

9. Hutcheson continued to work for Expeditors for more than 22 years, working his way up the Company ladder. On or about July 1, 2007, Hutcheson was promoted to Distribution Lead. On or about December 1, 2010, Hutcheson was promoted to Distribution Manager. In this role, Hutcheson was, *inter alia*, responsible for authorizing the payment by Expeditors of legitimate, factually accurate invoices from pallet suppliers.

10. In or around November 2017, Jennifer Williams (Expeditors' Atlanta Branch Manager) became Hutcheson's immediate supervisor.

11. In or around June 2023, Hutcheson was reassigned to the position of District Sales Executive.

### b. Hutcheson's Authorization of Expeditors' Pallet Purchases from "Primo"

12. Upon information and belief, Hutcheson met Woodall through Stephanie Gardner, Hutcheson's then-girlfriend, interior designer, and Woodall's mother. Prior to meeting Hutcheson, Woodall worked in the film industry as a carpenter.

13. Upon information and belief, Hutcheson originally approached Woodall and Gardner to involve them in business with Expeditors, presenting it as a "dream opportunity." Hutcheson created Woodall's fictitious company, "Primo," as a pallet vendor for Expeditors. Hutcheson was aware that such a business arrangement with the son of his then-girlfriend, assuming it were an actual company, constituted a conflict of interest. Expeditors' Code of Business Conduct, about which Hutcheson received annual training during his tenure with the Company, is just one example of Hutcheson's knowledge of the conflict of interest.

14. Beginning in or around September 2022, Hutcheson began creating fake invoices on behalf of Primo to Expeditors for purported pallet delivery to Expeditors' Atlanta Branch.

15. Between September 2022 and June 2023, Expeditors paid approximately $671,000 to Primo for the supposed sale and delivery of 18,000 pallets, which

constitutes roughly 40 truckloads of pallets. Payments made were to satisfy 47 bogus invoices over the eight-month period. On average, Expeditors paid $26 - $28 per pallet allegedly supplied by Primo. Based on a comparison to what other pallet vendors charged for functionally identical pallets at the time, the alleged cost of Primo pallets was two to three times the available market rate for the given period.

17. Hutcheson approved the payment of every single bogus invoice. This approval violated Expeditors' policies on financial controls.

17. Despite Expeditors paying for the pallets, neither Woodall nor any other purported agent of Primo, LLC, nor any provider in proxy delivered the pallets to Expeditors, its affiliates, or its customers.

18. Moreover, Primo, LLC is not a company that sells or distributes pallets. Instead, upon information and belief, Primo, LLC is "Primo Kennels, LLC", a Georgia domestic LLC that bred and sold dogs. The address listed on the invoices issued by Primo and authorized for payment by Hutcheson is to a private residence near Jackson Lake in Jasper County, Georgia. The address has neither an associated warehouse nor space capable of storing 18,000 pallets. Furthermore, upon information and belief, Woodall does not own any trucks with which to transport pallets to Expeditors, Expeditors' affiliates, or Expeditors' customers.

19. Upon information and belief, each of the invoices issued on behalf of Primo was computer-generated by Hutcheson, even for the invoices for the supposed demolition work done by Woodall for Expeditors.

20. The payments to Primo from Expeditors that Hutcheson authorized were sent to an account in Woodall's name at Heritage Bank.

21. Upon information and belief, during the relevant period, Hutcheson had access to Woodall's bank account information, including his routing number at Heritage Bank, Woodall's social security number and other of Woodall's personal and confidential details.

22. Upon information and belief, through wire transactions in either Woodall or Gardner's name, Hutcheson transferred money from the Primo account at Heritage Bank to his own personal account.

23. In total, Hutcheson and Woodall defrauded Expeditors under this supposed pallet sale scheme of approximately $671,000.

c.  **Expeditors Investigates the Pallet Purchases and Terminates Hutcheson's Employment**

24. Following discovery of Hutcheson's fraudulent authorization of Expeditors' payment of approximately $671,000 to Primo for the fictitious sale of 18,000 pallets and the purported delivery of those pallets to Expeditors, its affiliates, and its customers and Hutcheson's subsequent fraudulent conveyance of those funds

to himself (through Primo), in December 2023 Expeditors launched an investigation into the missing pallets and funds, leading to Hutcheson's eventual suspension from employment.

25. On or around December 28, 2023, following Expeditors' investigation into Hutcheson's improper payment authorization of approximately $671,000, Expeditors terminated Hutcheson's employment for his gross misconduct in violation of its Code of Business Conduct and U.S. Employee Handbook.

26. Following the termination of his employment, Expeditors informed the Clayton County Police Department of Hutcheson's theft of funds, and a warrant for Hutcheson's arrest was issued by Clayton County. Hutcheson was subsequently arrested on one felony count of Theft by Deception.

27. In or around March 2025, Hutcheson was released on bond with conditions for his role in the theft of funds from Expeditors.

28. Upon information and belief, Woodall was also arrested on one felony count of Theft by Deception in Clayton County and subsequently released on bond with conditions for his role in the theft of the funds from Expeditors.

**d. Hutcheson's Email Smear Campaign Against Expeditors**

29. Upon information and belief, between December 2024 and May 2025, using a couple of email aliases, Hutcheson sent several emails to Expeditors' employees, directors, officers, customers, vendors, and competitors, and even to

various "media" outlets in an attempt to tarnish Expeditors' good standing and to interfere with its employment and commercial relationships.

30. One such email, sent on December 27, 2024, to more than 30 individuals and entitled "Exposé: Expeditors' Atlanta Leadership - 2764 Anvil Block Rd, Ellenwood, GA · (770) 991-9333 Why Expeditors International Is No Longer Fit for Your Business" contained multiple defamatory statements, including:

    a.  Expeditors International (EI), once a name synonymous with logistics excellence, now stands as a glaring symbol of unchecked corporate greed, systematic exploitation, and the ruthless prioritization of executive enrichment over ethical practices. Behind the polished facade lies a disturbing network of fraud, coercion, and regulatory violations, intricately designed to defraud clients, cripple competitors, and crush internal dissent. This document lays bare the full extent of EI's exploitative practices, exposing them as unfit for any responsible organization to associate with.

    b.  At the heart of EI's operations is a relentless pursuit of profit at any cost, a philosophy that has driven the company to adopt systematically corrupt frameworks to exploit its clients and employees. These frameworks operate as a coordinated machine of deceit, aimed at

maximizing revenue while shielding EI's executive leadership from accountability.

c.  Fraudulent billing practices are the cornerstone of EI's exploitative strategies. Clients have been subjected to fabricated charges hidden under vague terms like "per diem" and "storage fees," making it nearly impossible for even the most vigilant finance teams to detect discrepancies.

31. None of these statements are true. Rather, upon information and belief, Hutcheson sent the email with the intention of diverting corporate opportunities away from Expeditors and to sow discord, distrust, and fear amongst Expeditors' employees with the intention to cause them to leave the employ of Expeditors. Such statements led Expeditors' customers and vendors to inquire about the veracity of such vitriol, which played directly into the hands of Hutcheson and Expeditors' competitors. Similarly, such statements caused Expeditors' employees to become increasingly concerned about the integrity of Expeditors as their employer, to fear loss of employment, and to harbor concern for their safety.

32. The December 27, 2024, email also lists four of Expeditors' Corporate Officers' personal cell phone numbers and email addresses. This is an example of Hutcheson's persistent practice to specifically name Expeditors' employees,

directors, and officers in order to put immense pressure on them, to the point of risking their privacy and safety as well as causing them emotional distress.

33. Another email, sent on or around January 6, 2025, was sent from the same email domain with the subject line "Global Systematic Corruption at Expeditors International of Washington: Criminal Organization & Collusion Report." This email was sent to more than 30 of Expeditors' customers, vendors, and competitors in a further attempt to tarnish Expeditors' good standing. This email alleged that three of Expeditors' officers – Matt Littleton (Expeditors' Atlanta District Manager); Patrick Duffy (Expeditors' Mid-Atlanta Regional Vice President); and Jennifer Williams (Expeditors' Atlanta Branch Manager) – had "executed a toxic playbook of 'Deny, Depose, Defend,' systematically suppressing accountability and prioritizing profits over integrity. Their actions have left a trail of broken trust with clients, demoralized employees, and a logistics industry questioning the foundation of one of its largest players."

34. The statements contained in the January 6, 2025, email similarly are false and were sent with the intention of diverting corporate opportunities away from Expeditors and to undermine these employees' leadership authority in the Atlanta branch. Again, Expeditors' customers and vendors inquired about the veracity of the statements made in the email; some customers and vendors also expressed concerns about whether continuing business relationships with Expeditors was wise and safe.

10

This language again played directly into the hands of Hutcheson and Expeditors' competitors. In fact, Littleton, Duffy, and Williams were among Expeditors' leaders who discovered Hutcheson's theft from Expeditors and decided upon his termination of employment in an effort to safeguard the Company from further damage.

35. In total, upon information and belief, Hutcheson sent or caused to be sent at least 16 emails with the purpose of defaming and casting in a false light Expeditors and its employees, directors, and officers with the intent to damage Expeditors' goodwill and standing in the business community.

**e.  Hutcheson's LinkedIn Tirade**

36. Hutcheson's defamatory remarks were not confined to email correspondence. Shortly following the termination of his employment, Hutcheson made it his cause to serially post derogatory remarks about Expeditors and its employees, directors, and officers on his LinkedIn account in an attempt to drag Expeditors through the mud.

37. For example, in one post, Hutcheson stated that he was "Going to Expose The Most Criminal CHQ Liar Since Enron!" and that he was going to expose "Malicious FALSE LIES" with reference to Expeditors' Atlanta Branch as the "FAKE DOCUMENT DATA CENTER ~ Where They Manufacture Everything With Excellence in Corruption." Such post also highlighted Jennifer Williams' LinkedIn page, including a screenshot of her account and picture.

11

38. Hutcheson's posts have been threatening to Expeditors' employees generally, and Williams specifically, including the repeated public posting of her home address. This has resulted in Williams fearing for her safety and obtaining a restraining order against Hutcheson for stalking.

39. In another post, following his arrest by the Clayton County Police Department, Hutcheson took to LinkedIn to encourage Expeditors' employees to strike against the Company. Because the Clayton County Police Department's Incident Report incorrectly characterized Hutcheson as African American, Hutcheson sent a call to "Every African American Serving Expeditors in the Warehouse" to "Strike" against Expeditors, as shown below:



40. Hutcheson deployed this post with the intent of injuring Expeditors' good standing with its employees and to cause disruption within Expeditors' operations.

41. As recently as July 8, 2025, Hutcheson posted on LinkedIn, specifically threatening Expeditors' President and Chief Executive Officer (Daniel R. Wall), Senior Vice President, General Counsel & Corporate Secretary (Jeffrey F. Dickerman), and Vice President, Associate General Counsel, Chief Ethics &

Compliance Officer (Kevin Osborn). In his post, Hutcheson stated that "I'm Going to Outline Exactly How Millions We Overbilled to Clients in Atlanta Through BS Additional Invoices" and that "You Will Lose Your Home Now," as shown below.



42. At the time of the filing of this Complaint, Expeditors has incurred the loss of approximately $671,000 in damages as a result of Hutcheson's and Woodall's theft and conversion, and while the full extent of Expeditors' damages is still unknown, Expeditors anticipates that it will expend considerably more money to remedy the reputational harm and loss of prospective customers and revenue that

Hutcheson's defamatory comments have caused. Hutcheson's conduct has also caused irreparable harm for which damages are an insufficient remedy.

## COUNT ONE
## Civil Theft
### (Against Hutcheson and Woodall)

43. Expeditors repeats and realleges paragraphs 1 through 42 hereof, as if fully set forth herein.

44. Hutcheson, working in concert with Woodall, unlawfully took and/or misappropriated approximately $671,000 that belonged to Expeditors.

45. Hutcheson and Woodall did so with the intention of depriving Expeditors of such funds.

46. Hutcheson and Woodall's theft has caused Expeditors damages in the form of approximately $671,000 in lost assets, plus prejudgment interest, and other damages to be proven at trial.

## COUNT TWO
## Conversion
### (Against Hutcheson and Woodall)

47. Expeditors repeats and realleges paragraphs 1 through 42 hereof, as if fully set forth herein.

48. Expeditors maintained title to the approximately $671,000 in cash.

49. Through their fraudulent pallet scheme through which Hutcheson authorized Expeditors' payments to Woodall's bank account, Defendants took possession of the approximately $671,000 in cash.

50. Through their conversion, Hutcheson and Woodall have caused Expeditors damages in the form of approximately $671,000 in lost assets, plus prejudgment interest, and other damages to be proven.

## COUNT THREE
### Tortious Interference with Business Relations
(Against Hutcheson)

51. Expeditors repeats and realleges paragraphs 1 through 42 hereof, as if fully set forth herein.

52. Hutcheson's transmission of emails to Expeditors' customers, vendors, and competitors and LinkedIn posts aimed at the same constitutes improper action and/or wrongful conduct.

53. Such actions and conduct were done without Expeditors' approval or any other legal privilege.

54. Hutcheson acted purposefully and with malice with the intent to injure Expeditors' good standing in the business community.

55. Upon information and belief, Hutcheson's actions caused third parties to discontinue business with Expeditors and prevented third parties to enter into anticipated business relationships with Expeditors.

16

56. Hutcheson's tortious interference proximately caused Expeditors' damages.

57. Hutcheson's conduct has also caused irreparable harm to Expeditors for which money damages cannot adequately compensate.

## COUNT FOUR
## Defamation Per Se
### (Against Hutcheson)

58. Expeditors repeats and realleges paragraphs 1 through 42 hereof, as if fully set forth herein.

59. Beginning in December 2023, Hutcheson has made and repeatedly makes defamatory statements about Expeditors, its employees, officers, and directors.

60. These statements were written and made available to third parties via email and social media.

61. Hutcheson made such statements negligently or with actual malice, knowing that the statements were false when made, and with reckless disregard for the truth.

62. Hutcheson's statements both: (1) impute to Expeditors and its employees, officers, and directors a crime punishable by law; and (2) contain charges regarding their trade, office, or profession and are calculated to injure Expeditors and its employees, officers, and directors.

63. Expeditors has been damaged as a result of Hutcheson's defamatory statements.

64. Hutcheson's conduct has also caused irreparable harm to Expeditors for which money damages cannot adequately compensate.

## COUNT FIVE
### Defamation
### (Against Hutcheson)

65. Expeditors repeats and realleges paragraphs 1 through 42 hereof, as if fully set forth herein.

66. Upon information and belief, beginning in December 2023 to present, Hutcheson repeatedly made defamatory statements about Expeditors, its employees, officers, and directors.

67. Upon information and belief, these statements were written and made available to third parties via email and social media.

68. Hutcheson made such statements negligently or with actual malice, knowing that the statements were false when made, and with reckless disregard for the truth.

69. Expeditors has been damaged as a result of Hutcheson's defamatory statements.

70. Hutcheson's conduct has also caused irreparable harm to Expeditors for which money damages cannot adequately compensate.

## COUNT SIX
### False Light
### (Against Hutcheson)

71. Expeditors repeats and realleges paragraphs 1 through 42 hereof, as if fully set forth herein.

72. Upon information and belief, through emails and social media posts, Hutcheson has publicly placed Expeditors in a false light in the public eye. He has falsely publicized information depicting Expeditors as something for which they are not, including, but not limited to, a corrupt business organization.

73. Such false light is highly offensive to a reasonable person.

74. This conduct has caused Expeditors to suffer damages in an amount to be proven at trial.

75. This conduct has also caused irreparable harm to Expeditors for which money damages cannot adequately compensate.

## COUNT SEVEN
### Attorneys' Fees and Litigation Expenses (O.C.G.A. § 13-6-11)
### (Against Hutcheson and Woodall)

76. Expeditors repeats and realleges paragraphs 1 through 42 hereof, as if fully set forth herein.

77. Defendant Hutcheson and Woodall have acted in bad faith and/or were stubbornly litigious, and/or caused Plaintiff unnecessary trouble and expense in this matter, incurring Expeditors attorneys' fees and costs.

## COUNT EIGHT
## Punitive Damages (O.C.G.A. § 51-12-5.1)
## (Against Hutcheson and Woodall)

78. Expeditors repeats and realleges paragraphs 1 through 42 hereof, as it fully set forth herein.

79. Hutcheson engaged in willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences and is liable for punitive damages in an amount sufficient to punish, penalize, and deter.

80. Woodall engaged in willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences and is liable for punitive damages in an amount sufficient to punish, penalize, and deter.

## REQUESTED RELIEF

**WHEREFORE**, Expeditors requests relief as follows:

A.    That a judgement be awarded to Expeditors and against Defendants, jointly and severally, for compensatory damages in an amount to be proven at trial, but in any event not less than $671,000;

B.    That judgment be awarded to Expeditors and against Defendants for punitive damages;

C.    That judgement be awarded to Expeditors and against Defendants for all costs and expenses, including attorneys' fees, incurred by Expeditors as permitted by applicable law in an amount to be proven at trial as to each of the above Counts;

D.    That the Court issue an order:

    a.    Requiring that Hutcheson delete all social media posts (on LinkedIn or wherever else posted) that defame, disparage and/or cast in a false light Expeditors or its past, current, or future employees, directors, and officers;

    b.    Enjoining Hutcheson from defaming, disparaging, or otherwise casting Expeditors in a false light or intentionally interfering with Expeditors' business relationships, including, without limitation, by emailing or otherwise contacting, Expeditors or its past, current, or future employees, directors, officers, customers, or vendors;

    c.    Enjoining Hutcheson from posting new, public messages or other content on LinkedIn or any other social media accounts, or in media, including but not limited to *Loadstar*, directed to Expeditors or its past, current, or future employees, directors, or officers, that defames, disparages, or otherwise casts Expeditors in a false light or that is intentionally designed to interfere with Expeditors' business; and

21

    d.   Enjoining Hutcheson from commenting on or contacting Expeditors employees, including, without limitation, President and Chief Executive Officer Daniel R. Wall, Senior Vice President, General Counsel, & Corporate Secretary Jeffrey F. Dickerman, Vice President, Associate General Counsel, Chief Ethics & Compliance Officer Kevin Osborn, Regional Vice President Patrick Duffy, Atlanta District Manager Matthew Littleton, and Atlanta Branch Manager Jennifer Williams;

E.    Granting Expeditors such other and further relief as the Court deems just and proper; and

F.    Granting Expeditors a trial by jury on all issues so triable.

Dated: July 29, 2025

Respectfully submitted,

*/s/ Charles E. Peeler*
Charles E. Peeler
Georgia Bar No. 570399
Peter D. Leary
Georgia Bar No. 612045
Derek L. Centola
Georgia Bar No. 749911
**TROUTMAN PEPPER LOCKE LLP**
600 Peachtree Street, NE, Suite 3000
Atlanta, Ga 30308-2216
Telephone: 404.885.3000
Facsimile: 404.885.3900

22

Charles.peeler@troutman.com
Peter.leary@troutman.com
Derek.centola@troutman.com

*Attorneys for Plaintiff Expeditors International of Washington, Inc.*